FRANKLIN | SOTO LLP
Joshua D. Franklin (SBN 264536)
josh@franklinsoto.law
Cheryl Dunn Soto (SBN 250892)
cheryl@franklinsoto.law
444 West C Street, Suite 300
San Diego, California 921010
Tel: 619.872.2520
Fax: 619.566.0221

*Attorneys for Defendant/Counterclaimant*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IRONSHORE SPECIALTY INSURANCE COMPANY,

Plaintiff,

v.

THE CROSBY ESTATE AT RANCHO SANTA FE MASTER ASSOCIATION,

Defendant.

---

THE CROSBY ESTATE AT RANCHO SANTA FE MASTER ASSOCIATION,

Counterclaimant,

v.

IRONSHORE SPECIALTY INSURANCE COMPANY,

Counter-defendant.

Case No: 21-cv-1249-WQH-AHG

**REPLY IN SUPPORT OF MOTION TO STAY PENDING RESOLUTION OF RELATED ACTION**

Judge: Hon. William Q. Hayes
Date: September 27, 2021

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**

## I. INTRODUCTION

Plaintiff/Counter-Defendant Ironshore Specialty Insurance Company's ("Ironshore") opposition to the requested stay contends Ironshore's interest in having its recently filed declaratory relief action adjudicated as quickly as possible outweighs the prejudice to its insured in having to fight a two-front war. In doing so, Ironshore overlooks the case law in this District that has consistently favored staying insurance coverage actions pending the outcome of related proceedings bearing upon the disputed coverage issue.

In addition, Ironshore's purported prejudice is questionable, at best, given Ironshore is not contesting coverage of the underlying claims altogether, but rather the issue of whether an insured must satisfy the Policy's retention as a condition of Ironshore's duty to defend – the precise issue recently litigated by the same parties and decided in The Crosby's favor. In contrast, Defendant/Counterclaimant The Crosby Estate at Rancho Santa Fe Master Association ("The Crosby") has presented evidence establishing it will suffer a true hardship if forced to simultaneously litigate both this action and *The Crosby I* (Case No. 19-cv-02369-WQH-NLS).

Finally, Ironshore's argument that the orderly course of justice favors prioritizing the adjudication of this action before the resolution of *The Crosby I* – which was filed more than eighteen months earlier and will likely have collateral estoppel effect as to the issue presented here – is unavailing. The Court should accordingly grant the requested stay.

## II. ARGUMENT

### A. The *Landis* Factors Support a Stay of this Insurance Coverage Action

Ironshore cites case law summarizing the standard for staying proceedings, generally, but ignores the case law in this District addressing the unique considerations applicable to insurance coverage actions. Courts in this District have frequently concluded the factors set forth in *Landis v. N. Am. Co.*, 299 U.S. 248

(1936), weigh in favor of staying insurance coverage actions pending the outcome of related proceedings bearing upon the disputed coverage issue. *See*, *e.g*., *Sentinel Ins. Co. v. Starritt*, No. 3:21-cv-788-CAB-BGS, 2021 WL 4034160 at *2 (S.D. Cal. Sep. 3, 2021) (staying insurer's declaratory judgment action pending completion of trial in underlying lawsuit and finding insurer's continued defense of underlying lawsuit "is not damage under *Landis*"); *Citizens Ins. Co. of Am. v. Chief Digital Advisors, LLC* No. 20-CV-1075-MMA (AGS), 2020 WL 8483913, at *2 (S.D. Cal. Dec. 22, 2020) (granting stay of insurance coverage action pending resolution of related underlying action being defended by insurer and noting, "delaying a determination of an insurer's coverage obligations does not constitute damage under the factors set forth in *Landis*"); *Safeco Ins. Co. v. Nelson*, No. 20-cv-00211-MMA (DEB), 2020 WL 3791675, at *5 (S.D. Cal. July 7, 2020) (noting "a delayed determination of an insurer's coverage obligations" does not constitute a hardship under *Landis* "because advancing defense costs is part of an insurer's obligation and costs of doing business.").

The Court should similarly conclude a stay of this action is appropriate, particularly given the precise issue upon which Ironshore seeks declaratory relief here was just recently litigated *by the same parties*.

**B. Ironshore Will Not Be Prejudiced by a Stay**

Despite the weight of authority in this District finding an insurer's continued defense of an underlying action does not constitute damage under *Landis*, Ironshore contends it would be harmed by a stay. (Opp. Mem. at 6-8.) But Ironshore's purported prejudice is even weaker than that of a typical insurer for at least two reasons. First, the complaint for declaratory relief here does not dispute Ironshore's duty to defend either of the underlying claims; instead, Ironshore seeks only a declaration that the Insured must satisfy a retention as a condition of coverage, even if the Insured has tendered the defense of a claim to Ironshore. (*See* Complaint [ECF

#1] at ¶ 57.) Thus, regardless of the outcome of this action, Ironshore will not be forced to defend an action as to which the Court ultimately determines there is no coverage altogether. Rather, if Ironshore prevails in this action, it will still have a duty to defend, although it may be entitled to seek reimbursement of certain defense costs the Court ultimately determines should have been borne by The Crosby pursuant to the Policy's Retention.

Second, unlike a typical declaratory relief action brought by an insurer asserting an unsettled policy interpretation, the relief sought by Ironshore here concerns the precise issue it recently litigated and lost in connection with a previous version of the *same Policy*. Ironshore attempts to distance this case from the Court's decision in *The Crosby I* by contending "the policies at issue are different [and] the facts of the underlying cases are different." (Opp. Mem. at 10:16 – 10:17.) But Ironshore's characterization is misplaced.

As discussed in The Crosby's opening brief, the pertinent policy language concerning the applicability of the Policy's Retention in both the 2017-18 Policy and the 2019-20 Policy is identical. (*Compare* 2017-18 Policy [Franklin Decl. Ex. 1] at pp. 15-17 *with* 2019-20 Policy [Franklin Decl. Ex. 2] at 13-15.) To that point, Ironshore's Opposition fails to identify any difference, whatsoever, in the pertinent policy language contained in the two Policies. Furthermore, the facts of the underlying cases are irrelevant in determining whether or not the policy language makes clear an insured must satisfy a retention as a condition of tendering the defense of a claim to Ironshore or Ironshore's duty to defend. In other words, Ironshore cannot credibly distinguish the coverage issue here from the one recently litigated in *The Crosby I*. Accordingly, any prejudice to Ironshore in having to wait until the conclusion of *The Crosby I* before rehashing the same argument it lost less than a year ago is all but imperceptible and insufficient to justify denial of the requested stay.

### C. The Crosby Has Presented Evidence of a Hardship It Will Suffer if Required to Go Forward

In support of The Crosby's Motion to Stay, it submitted the declaration of David Kingston, its Treasurer and former Secretary, who has personal knowledge of The Crosby's finances and the fees and costs incurred in connection with *The Crosby I*. (*See* Kingston Decl. [ECF #21-2].) Mr. Kingston's declaration establishes (1) the fees and costs expended in connection with *The Crosby I* have already placed a stress on The Crosby's finances; and (2) being forced to litigate this action in the near future "may require The Crosby to cancel or defer certain maintenance obligations of its common area and expenditures on behalf of its members, or increase its members' assessments." (*Id*. at ¶ 8.). This evidence establishes a concrete hardship weighing in favor of a stay.

Apart from questioning the basis for a treasurer's knowledge of The Crosby's finances, Ironshore has not refuted this evidence of hardship. Instead, Ironshore mocks The Crosby's prejudice as "grumbling" and contends that being forced to fight a two-front war is insufficient to justify a stay because "[p]arties simultaneously litigate multiple cases all the time." (Opp. Mem. at 9:23 – 9:24.) In doing so, Ironshore ignores the case law in this District recognizing and evaluating "prejudice to the insured in having to fight a two-front war." *Starritt*, 2021 WL 4034160 at *2 (quoting *Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-cv-05345-LHK, 2019 WL 570760 at *6 (N.D. Cal. Feb. 12, 2019)); *see also Nelson*, 2020 WL 3791675, at *5 (finding the insured's cost of litigating multiple suits simultaneously weighed in favor of granting stay). Contrary to Ironshore's suggestion, the prejudice to an insured of having to litigate on two fronts generally outweighs an insurer's interest in escaping its coverage obligations as soon as possible. *See Starritt*, 2021 WL 4034160 at *2 ("Courts have found that any prejudice (if at all) to the insurer in having to pay defense costs while the underlying case is pending is outweighed by prejudice to the

insured in having to fight a 'two-front war.") (quoting *Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-CV-05345-LHK, 2019 WL 570760, at *6 (N.D. Cal. Feb. 12, 2019)).

Ironshore also points out The Crosby is seeking a stay here because of another related coverage action against Ironshore, not "because of an underlying action." (Opp. Mem. at 10:1.) But the prejudice associated with fighting a two-front war here is even more compelling because, unlike the typical situation in which an insurer is defending the underlying action while trying to escape coverage in its declaratory relief action, The Crosby is paying its fees and costs *in both cases*. *Cf. Great American Assurance Co. v. M.S. Indus. Sheet Metal, Inc.*, No. SACV 11-754-JST (MLGx), 2011 WL 13228037 at * (C.D. Cal. Sep. 22, 2011) (noting "any difficulty posed by simultaneously defending two proceedings is alleviated in this case because Great American is currently defending [the insured] in the [underlying action]).

Finally, the fact that the Court in *The Crosby I* has not yet set a trial date does not negate the potential prejudice to The Crosby if forced to go forward here. The Court may at any moment schedule a Final Pretrial Conference, triggering the procedural requirements and deadlines dictated by the Local Rules. Ironshore has no basis for predicting the timing or expense associated with The Crosby's pretrial responsibilities in *The Crosby I*, other than through pure conjecture. Thus, notwithstanding Ironshore's criticism, the evidence presented by The Crosby establishes a true hardship weighing in favor of the requested stay.

### D. Resolution of *The Crosby I* Will Foster the Orderly Course of Justice in this Case

Ironshore contends a stay of this action will impede the orderly course of justice, in part, because the Court has already granted partial summary judgment in *The Crosby I* with respect to the issue in dispute here – whether an insured must satisfy the Policy's Retention as a condition of Ironshore's duty to defend. (*See* Opp.

Mem. at 10:21 – 11:1.). And Ironshore suggests "it is relatively unlikely that resolution of the remaining issues in the [*The Crosby I*] will significantly assist the district court in the decision of the factual and legal issues before it." (Opp. Mem. at 11:21 – 11:23 [internal quotations omitted].) But the only issue here is a matter of law that will eventually become settled through a final judgment in *The Crosby I*, at which time the Court's November 3, 2020 Order will achieve collateral estoppel effect here.

Because *The Crosby I* was filed more than eighteen months before this action, and addressed the precise issue presented here, the orderly course of justice dictates allowing *The Crosby I* to proceed to judgment before addressing Ironshore's more recent, duplicative declaratory relief claim.

## III. CONCLUSION

For the foregoing reasons, and the reasons set forth in its Motion to Stay Pending Resolution of Related Action, The Crosby respectfully requests that the Court stay this action pending resolution of *The Crosby I*.

Date: September 20, 2021

Respectfully submitted,

FRANKLIN | SOTO LLP

By: /s/ Joshua D. Franklin
Joshua D. Franklin
Cheryl Dunn Soto

*Attorneys for The Crosby Estate at Rancho Santa Fe Master Association*